# Exhibit "A"

↙LOAN # 

# NOTE

JULY 18, 2005              VALLEY STREAM              NY
      [Date]                    [City]                [State]
177 ROBERTA STREET, VALLEY STREAM, NY 11580

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $   333,000.00        (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is   BANK OF AMERICA, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of        5.750      %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the      1ST     day of each month beginning on   SEPTEMBER 01, 2005
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on     AUGUST 01, 2035                   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   BANK OF AMERICA, N.A., P.O. BOX 17404, BALTIMORE, MD 21297-1404                              or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $      1,943.30

NEW YORK FIXED RATE NOTE – Single Family

## 4. BORROWER'S RIGHT TO PREPAY

I HAVE THE RIGHT TO MAKE PAYMENTS OF PRINCIPAL AT ANY TIME BEFORE THEY ARE DUE. A PAYMENT OF PRINCIPAL ONLY IS KNOWN AS A "PREPAYMENT." WHEN I MAKE A PREPAYMENT, I WILL TELL THE NOTE HOLDER IN WRITING THAT I AM DOING SO. I MAY NOT DESIGNATE A PAYMENT AS A PREPAYMENT IF I HAVE NOT MADE ALL THE MONTHLY PAYMENTS DUE UNDER THIS NOTE.

I MAY MAKE A FULL PREPAYMENT OR PARTIAL PREPAYMENT WITHOUT PAYING ANY PREPAYMENT CHARGE. AFTER PAYING ANY LATE FEES OR OUTSTANDING FEES THAT I OWE, THE NOTE HOLDER WILL USE MY PREPAYMENTS TO REDUCE THE AMOUNT OF PRINCIPAL THAT I OWE UNDER THIS NOTE. HOWEVER, THE NOTE HOLDER MAY APPLY MY PREPAYMENT TO THE ACCRUED AND UNPAID INTEREST ON THE PREPAYMENT AMOUNT BEFORE APPLYING MY PREPAYMENT TO REDUCE THE PRINCIPAL AMOUNT OF THIS NOTE. IF I MAKE A PARTIAL PREPAYMENT, THERE WILL BE NO CHANGES IN THE DUE DATES OR IN THE AMOUNT OF MY MONTHLY PAYMENT UNLESS THE NOTE HOLDER AGREES IN WRITING TO THOSE CHANGES.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    16 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 2.0        % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Wells Fargo Bank, N.A., as trustee for the holders of the Banc of America Alternative Loan Trust 2005-8 Mortgage Pass-Through Certificates, Series 2005-8

_____ (Seal)
DAVID SACKOLWITZ                     -Borrower

_____ (Seal)
ANNA SACKOLWITZ                      -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
PAY TO THE ORDER OF                  -Borrower

_____ (Seal)
WITHOUT RECOURSE                     -Borrower
Banc of America, N.A.

BY _____ (Seal)
     WILLIAM L. CRAIG                -Borrower
ASSISTANT VICE PRESIDENT

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

*(Sign Original Only)*



## NASSAU COUNTY CLERK'S OFFICE
### ENDORSEMENT COVER PAGE

Recorded Date: 08-29-2005
Recorded Time: 10:14:00 a

Liber Book: M  29305
Pages From:      358
To:      376

Control
Number:   243
Ref #: CW  045814
Doc Type: M01  MORTGAGE

Record and Return To:
BANK OF AMERICA
9000 SOUTHSIDE BLVD
BLDG 700 FILE RECEIPT DEPT
JACKSONVILLE, FL  32256

Location:
HEMPSTEAD (2820)

| Section | Block | Lot | Unit |
|---|---|---|---|
| 0037 | 00149-00 | 00033 | |

Consideration Amount:        333,000.00

Taxes Total           3,466.50
Recording Totals          92.00
Total Payment         3,558.50

EX0001

THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED
KAREN V. MURPHY
COUNTY CLERK

ADVANCE ABSTRACT CORP.

Return To: ▮▮▮▮▮▮▮▮▮▮▮

JACKSONVILLE POST CLOSING
BANK OF AMERICA
9000 SOUTHSIDE BLVD. , BLDG 700, FILE RECEIPT DEPT.
JACKSONVILLE, FL  32256

Prepared By: RON JOHNSON
BANK OF AMERICA, N.A.
1400 BEST PLAZA DR, STE 101
RICHMOND, VA  23227

——————————— [Space Above This Line For Recording Data] ———————————

LOAN # ▮▮▮▮▮▮

# MORTGAGE

## WORDS USED OFTEN IN THIS DOCUMENT

(A) "Security Instrument." This document, which is dated        JULY 18, 2005
together with all Riders to this document, will be called the "Security Instrument."
(B) "Borrower."   DAVID SACKOLWITZ AND ANNA SACKOLWITZ

"This real property is or will be improved by a one or two family residence or dwelling only."

whose address is 177 ROBERTA STREET , VALLEY STREAM NY 11580
sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "Lender." BANK OF AMERICA, N.A.

will be called "Lender." Lender is a corporation or association which exists under the laws of
THE UNITED STATES OF AMERICA        . Lender's address is 1400 BEST PLAZA DR,
STE 101, RICHMOND, VA 23227

(D) "Note." The note signed by Borrower and dated JULY 18, 2005        , will be called
the "Note." The Note shows that I owe Lender  THREE HUNDRED THIRTY THREE THOUSAND AND
00/100

Dollars (U.S. $        333,000.00        )

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

▮▮-6(NY) (0005).01        Form 3033 1/01
Page 1 of 17        Initials: DS. AS
VMP Mortgage Solutions, Inc. (800)521-7291        CVNY 07/18/05 8:29 A▮

Sec: 37  Blk: 149  Lot: 33
on Land and Tax Map of Nassau

92

plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by  AUGUST 01,  2035

(E) "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property."

(F) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(H) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(I) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions will be called "Applicable Law."

(J) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(K) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

(M) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(N) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(P) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

Initials: _DS. AS._

-6(NY) (0005).01
CVNY 07/18/05 8:29 AM

Page 2 of 17

Form 3033 1/01

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

## DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described in (A) through (G) below:

(A) The Property which is located at

177 ROBERTA STREET                                                                  [Street]

VALLEY STREAM                        [City, Town or Village], New York 11580        [Zip Code].

This Property is in NASSAU                                County. It has the following legal
description:

"LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF."

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

Initials: _DS. GS._

-6(NY) (0005)01                        Page 8 of 17                        Form 3033 1/01
CVNY 07/18/05 9:29 AM

FIDELITY NATIONAL TITLE INSURANCE COMPANY

# SCHEDULE A
## (continued)

### LEGAL DESCRIPTION

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED, SITUATE, LYING AND BEING IN THE Incorporated Village of Valley Stream, Town of Hempstead, County of Nassau and State of New York, known and designated as and by lot numbered 33 in block 149 on a certain map entitled :"Map of Fenimore Terrace, Section number 2, situated at Valley Stream, Town of Hempstead, Nassau County, N.Y. urveyed May 20, 1946 by Flick and Simon, civil Engineers, Valley Stream, N.Y. and filed in the Office of the Clerk of the County of Nassau on July 31, 1946 under file no. 4339 and more particularly bounded and described as follows:

BEGINNING at a point on the easterly side of Roberta Street distant 326.13 feet southerly from the corner formed by the intersection of the easterly side of Roberta Street with the southerly side of Albermarle Avenue;

RUNNING THENCE easterly and at right angles to the easterly side of Roberta Street 100 feet;

THENCE southerly and parallel with the easterly side of Roberta Street 40 feet;

THENCE westerly and again at right angles to the easterly side of Roberta Street, 100 feet to the easterly side thereof;

THENCE northerly and along the easterly side of Roberta Street 40 feet to the point or place of BEGINNING.

SAID PREMISES also known as 177 Roberta Street, Valley Stream, NY 11580.

Section 37, Block 149, Lot 33

## ⋀ ADVANCE ABSTRACT CORP.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

1. **Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2. **Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

Initials: _Y.S. Q.S._

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

(a) Borrower's Obligations.

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

Initials: _D.S._ _a.S._

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b) Lender's Obligations.**

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c) Adjustments to the Escrow Funds.**

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments and Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but

only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection

Initials: 𝒥𝒮. 𝒶𝒮.

given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7. **Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

(a) **Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b) **Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

Initials: DS. QS.

-6(NY) (0005).01   Page 6 of 17   Form 3033 1/01

CVNY 07/18/05 9:29 AM

8. **Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

9. **Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance

would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has – if any – regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. **Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

Initials: _D.S. · A.S._

-6(NY) (0005).01    Page 10 of 17    Form 3033 1/01

CVNY 07/18/05 8:28 AM

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

12. Continuation of Borrower's Obligations And of Lender's Rights.

(a) Borrower's Obligations.

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) Lender's Rights.

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

Initials: _P.S. aS._

CVNY 07/19/05 8:29 AM

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting

Initials: _D.S. Q.S._

provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. I will be given one copy of the Note and of this Security Instrument.

18. Agreements about Lender's Rights If the Property Is Sold or Transferred. Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued. Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance. The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable

Initials: _P.S. A.S._

-6(NY) (0005).01    Page 13 of 17    Form 3033 1/01

CVNY 07/18/05 8:29 AM

Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in**

Initials: _P.S. A.S._

subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in section 15 of this Security Instrument, a notice that states:

   (1) The promise or agreement that I failed to keep or the default that has occurred;

   (2) The action that I must take to correct that default;

   (3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

   (4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

   (5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

   (6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

Initials: _P.S. A.S._

-8(NY) (0006).01                    Page 16 of 17                    Form 3033 1/01
CVNY 07/18/05 8:29 AM

**25. Borrower's Statement Regarding the Property [check box as applicable].**

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____

_____

_____ (Seal)
DAVID SACKOLWITZ                    -Borrower

_____ (Seal)
ANNA SACKOLWITZ                     -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

**STATE OF NEW YORK,**                    Nassau    County ss:

On the 18 day of July 2005 before me, the undersigned, a notary public in and for said state, personally appeared

David Sackolwitz + Anna Sackolwitz

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

Tax Map Information:

MICHAEL ROTT
Notary Public - State of New York
No. 01RO6128370
Qualified in Nassau County
Commission Expires June 13, 20 09

-6(NY) (0008).01                    Page 17 of 17          Initials: PS. AS    Form 3033 1/01

CVNY 07/15/05 8:29 AM





### NASSAU COUNTY CLERK'S OFFICE
### ENDORSEMENT COVER PAGE

Recorded Date: 06-11-2013          Record and Return To:
Recorded Time:  9:50:31 a          WEB TITLE AGENCY
                                   500-A CANAL VIEW BLVD
   Liber Book: M  38798          ROCHESTER, NY  14623
  Pages From:       207
       To:       210

     Control
    Number:   200
    Ref #:
  Doc Type: M23  ASSIGN MORTGAGE

  Refers to: Book: M 29305 Page: 358

Location:                 Section Block    Lot     Unit
HEMPSTEAD (2820)          0037    00149-00 00033

                                  Taxes Total           .00
                       Recording Totals      210.00
CHK001                    Total Payment      210.00

THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED
              MAUREEN O'CONNELL
              COUNTY CLERK

Record & Return
Web Title Agency
500-A Canal View Boulevard
Rochester, NY 14623

| | |
|---|---|
| Section: | 37 |
| Block: | 149 |
| Lot: | 33 |
| County: | NASSAU |

## ASSIGNMENT OF MORTGAGE

KNOW THAT BANK OF AMERICA, N.A., Assignor, a corporation or association which exists under the laws of New York and having its principal place of business 7105 Corporate Drive, Plano, TX 75024.

in consideration of One and no/100 ($1.00) Dollars paid by:

WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF BANC OF AMERICA ALTERNATIVE LOAN TRUST 2005-8 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-8, Assignee, having its principal place of business, 7105 Corporate Drive, Plano, TX 75024 hereby assigns unto the assignee, a certain mortgage made by DAVID SACKOLWITZ and ANNA SACKOLWITZ to BANK OF AMERICA, N.A., given to secure payment of the sum of THREE HUNDRED THIRTY THREE THOUSAND Dollars and No Cents and interest, dated July 18, 2005, recorded on August 29, 2005, in the Office of the Clerk of the County of Nassau in Book 29305, page 358, covering premises: 177 ROBERTA ST, VALLEY STREAM, NY 11580-2734 (SEE EXHIBIT A, ATTACHED, FOR LEGAL DESCRIPTION).

Together with the bond or obligation described in said mortgage, and the moneys due to grow due thereon with interest.

TO HAVE AND TO HOLD, the same unto the assignee, and to the successors, legal representatives and assigns of the assignee forever. This assignment is not subject to the requirement of Section 275 of Real Property Law because it is within the secondary mortgage market.

This Assignment is made to and accepted by the Assignee without warranty or representation on the part of the assignor and without recourse to the assignor in any event whatsoever.

IN WITNESS WHEREOF, the Assignor has duly executed the Assignment on *6 May 2013*, 2013.

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Lance Jay Harrell, Notary Public
City of Pittsburgh, Allegheny County
My Commission Expires June 21, 2016
MEMBER PENNSYLVANIA ASSOCIATION OF NOTARIES

BANK OF AMERICA, N.A.

BY: *MJ Rodgers*    *5/6/2013*
MJ Rodgers
Assistant Vice President (AVP)
Bank of America NA (Bana)

STATE OF Pennsylvania  )
                       )  ss.:
COUNTY OF Allegheny    )

On the *6th* day of *May* in the year 2013 before me, the undersigned, personally appeared *MJ Rodgers* personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), that by his/her/their signature(s) in the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the City of *Pittsburgh*, State of *Pennsylvania*.

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Lance Jay Harrell, Notary Public
City of Pittsburgh, Allegheny County
My Commission Expires June 21, 2016
MEMBER PENNSYLVANIA ASSOCIATION OF NOTARIES

NOTARY PUBLIC

**UNIFORM FORM CERTIFICATE OF ACKNOWLEDGEMENT
(OUTSIDE OF NEW YORK STATE)**

STATE OF _Pennsylvania_

County of _Allegheny_

On the _6th_ day of _May_, in the year of 20 _13_ before me, the undersigned, personally appeared _MJ Rodgers_, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in _Pittsburgh_ , _Pennsylvania_ . (Insert the city or political subdivision and the state or county or other place the acknowledgement was taken).

_____  _Notary Public_
(Signature and office of individual taking proof.)

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Lance Jay Harrell, Notary Public
City of Pittsburgh, Allegheny County
My Commission Expires June 21, 2016
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

**CERTIFICATE OF CONFORMITY
COMMONWEALTH OF PENNSYLVANIA
COUNTY OF ALLEGHENY**

That the undersigned does hereby certify that he/she is an attorney at law duly admitted to practice in the Commonwealth of Pennsylvania; that he/she is a person duly qualified to make this Certificate of Conformity pursuant to NYS RPL 299-a; that he/she does hereby certify that the acknowledgment attached hereto was taken in the manner prescribed by the laws of the Commonwealth of Pennsylvania and that the form of acknowledgment conforms to the laws of the Commonwealth Of Pennsylvania.

IN WITNESS WHEREOF, I have hereunto set my hand this _6th_ day of _May_ , 20 _13_ .

_Meghan K. Kalmar_
Print Name _Meghan K. Kalmar_
PA Attorney I.D. No.: _200107_
225 Fifth Avenue
Pittsburgh, Pennsylvania 15222

## SCHEDULE A
## DESCRIPTION OF MORTGAGED PREMISES

All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Incorporated Village of Valley Stream, Town of Hempstead, County of Nassau, and State of New York, known and designated as and by lot numbered 23 in Block 149 on a certain Map entitled" Map of Fenimore Terrace, Section Number 2, situated at Valley Stream, Town of Hempstead, Nassau County, NY, surveyed May 20, 1946, by Flick and Simon, Civil Engineers, Valley Stream, NY and filed in the Office of the Clerk of the County of Nassau on July 31, 1946, under File No. 4339 and more particularly bounded and described as follows:

Beginning at a point on the easterly side of Roberta Street, distant 326.13 feet Southerly from the corner formed by the intersection of the easterly side of Roberta Street with the Southerly side of Albermarle Avenue;

Running thence easterly and at right angles to the easterly side of Roberta Street, 100 feet;

Thence Southerly and parallel with the easterly side of Roberta Street 40 feet;

Thence Westerly and again at right angles to the easterly side of Roberta Street, 100 feet to the Easterly side thereof;

Thence northerly and along the easterly side of Roberta Street 40 feet to the point or Place of Beginning.

LOAN MODIFICATION AGREEMENT — Cap Fixed(Temp IO)                                        10/30/2013   *(page 1 of 3)*

_____ [Space Above This Line For Recording Data] _____

**Loan #** ██████████

# LOAN MODIFICATION AGREEMENT
### (Providing for Interest Only Payments and Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 30th day of October, 2013, between David Sackolwitz and Anna Sackolwitz ("Borrower") and Nationstar Mortgage LLC formerly known as Centex Home Equity Company ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated July 18, 2005 and recorded in Book or Liber _____, at page(s) _____, of the _____ Records of _____

        (Name of Records)                        (County and State, or other Jurisdiction)

and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

### 177 Roberta St Valley Stream Ny 11580
(Property Address)

the real property described being set forth as follows:

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of December 01, 2013, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $ 419,331.65, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 4.12500 %, from December 01, 2013. Borrower promises to make monthly payments of interest of U.S. $ 1,441.45, beginning on the 1st day of January, 2014, and continuing thereafter on the same day of each succeeding month until December 01, 2014 (the "Interest Only Period"). After expiration of the modification period, the interest rate Borrower will pay will be determined in accordance with the terms of the original Note. If on August 01, 2035 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. **Failure to Timely Remit Payments:** If at any time during the effective dates of this Modification Agreement the Borrower fails to timely make payments as specified hereinabove and such default or failure continues for more than thirty (31) days, then this Modification Agreement, at the option of Lender, shall terminate and all terms of the Note as originally executed shall be reinstated in full, effective as of the date of this Modification Agreement, and the amounts due and payable under the terms of the Note shall be as originally stated therein, as if this Modification Agreement had never existed. Time is of the essence with regard to all payments specified hereunder. Nothing contained herein shall prevent or preclude Lender from enforcing any of Lender's rights or remedies under the Note, or under any document or instrument evidencing or securing the indebtedness created by or under the Note, or shall be construed as a waiver of any of Lender's rights or remedies thereby created.

4. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

LOAN MODIFICATION AGREEMENT— Cap Fixed(Temp IO)

10/30/2013   *(page 2 of 3)*

Loan #: ███████

5. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument.

6. Borrower understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Borrower has no right of set-off or counterclaim, or any defense to the obligations of the Note or Security Instrument.

(d) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(e) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(f) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

_____ (Seal)
Nationstar Mortgage LLC-Lender

By: _____

_____ (Seal)
David Sackolwitz -Borrower

_____ (Seal)
Anna Sackolwitz -Borrower

STATE OF _____ )
                          )SS.
COUNTY OF _____ )

On the ____ day of _____, _____ personally appeared before me _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal

_____
Notary Public                    My appointment expires: _____

_____ [Space Below This Line for Acknowledgements] _____

# AGREEMENT TO MAINTAIN ESCROW ACCOUNT

WHEREAS, David Sackolwitz  and Anna Sackolwitz ("Borrower") desires Nationstar Mortgage LLC    ("Lender") to collect payments from Borrower to be held by Lender for the payment of certain sums due in connection with Borrower's Note and Security Instrument, dated July 18, 2005 , (hereinafter referred to as "Note" and "Security Instrument" respectively) currently held by Lender;

NOW THEREFORE, in consideration of the foregoing and the mutual covenants contained in this Agreement ("Agreement"), Borrower agrees to pay Lender, on the day Periodic Payments are due under the Note, until the Note is paid in full, or the Escrow Account is otherwise terminated pursuant to this Agreement or in accordance with applicable law, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Security Instrument; and (d) Mortgage Insurance Premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums.  These items are called "Escrow Items."  In the event that Borrower receives bills, assessments, invoices, or other requests for payment of Escrow Items, Borrower shall promptly furnish to Lender all such notices.

Borrower shall pay Lender the Funds for Escrow Items unless this Agreement is terminated either by Lender, or pursuant to applicable law.  In the event of termination, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.  In the event Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may pay such amount in accordance with the terms of the Note and Security Instrument and Borrower shall then be obligated to repay Lender any such amount.  Additionally, if Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may, in accordance with applicable law, require Borrower to maintain an Escrow Account.

Borrower agrees to make an initial payment of Funds to establish the escrow account, which amount shall be based on an estimate of the amount and date of expenditures for future Escrow Items, or otherwise in accordance with the Real Estate Settlement Procedures Act ("RESPA").  The estimate of expenditures of future Escrow Items shall be made based on current data available to Lender.  Borrower acknowledges that the actual payments of Escrow Items may vary from the estimated amounts.

Lender will collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA.  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity or in any Federal Home Loan Bank.  Lender shall apply the Funds to pay the Escrow Items no later than the time period specified under RESPA.  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge.  Unless agreed to in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds.  Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA.  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA.  If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument or termination of this Agreement, Lender shall promptly refund to Borrower any Funds held by Lender.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Agreement to Establish  Escrow Account.

| | |
|---|---|
| David  Sackolwitz -Borrower | 11/18/13 |
| | Date |
| Anna  Sackolwitz -Borrower | 11/19/13 |
| | Date |

Nationstar
MORTGAGE

STATE OF *New York*

COUNTY OF *Nassau*

On this *18th* day of *November*, *2013*, personally appeared before me *David Sackolwitz, Anna Sackolwitz*, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal

_____ Notary Public

My appointment expires: *1/17/2014*

HUN J. HA
Notary Public, State of New York
Registration # 01HA6140030
Qualified in Kings County
Commission Expires Jan 17, 20*14*

# Exhibit "B"



**Nassau County**
**Maureen OConnell**
**County Clerk**
**Mineola, NY 11501**

Instrument Number: 2019- 00018198
As
**C33 - ORDER**

Recorded On:  January 28, 2019

Parties:  WELLS FARGO BANK NATIONAL ASSN TRU

TO  DAVID SACKOLWITZ AKA

Recorded By:  COURT

Num Of Pages:

Comment:

** Examined and Charged as Follows: **

C33 - ORDER                          0.00

Recording Charge:          0.00

---

** THIS PAGE IS PART OF THE INSTRUMENT **

I hereby certify that the within and foregoing was recorded in the Clerk's Office For:  Nassau County, NY

**File Information:**                          **Record and Return To:**

Document Number:  2019- 00018198

Receipt Number:  1352144

Recorded Date/Time:  January 28, 2019 02:46:29P

Book-Vol/Pg:

Cashier / Station:  0 AO  /  NCCL-JCQVBP1

*Maureen O'Connell*

**County Clerk Maureen O'Connell**

## MEMORANDUM DECISION

## SUPREME COURT - STATE OF NEW YORK

### FORECLOSURE PART
### NASSAU COUNTY

PRESENT: Hon. Thomas A. Adams,
                  Supreme Court Justice

                             X

WELLS FARGO BANK, et al.,                         **INDEX NO.: 1780/17**

                            Plaintiff(s),        **Motion Seq. No.: 3**
                                                   **Motion Date: 11/9/18**

   - against -

DAVID SACKOLWITZ, et al.,

                            Defendant(s).
                                     X

      Motion pursuant to RPAPL § 1321 by plaintiff to confirm the Referee's Report dated June 22, 2018; for Judgment of Foreclosure and Sale pursuant to RPAPL § 1351; for distribution of the proceeds of sale pursuant to RPAPL § 1354 is granted.

      The sole argument advanced by the Sackolwitz defendants' attorney in opposition to plaintiff's motion is the purported lack of documentation to support the sums advanced for tax and hazard insurance disbursements set forth in the Referee's Report dated June 22, 2018. The argument is unavailing under the facts of this case.

      In granting plaintiff's motion for summary judgment, an Order of Reference and other related relief, this court held that plaintiff established a *prima facie* right to judgment as to the holder of the note and mortgage executed by the Sackolwitz defendants and their default in making the required payments. This court further held that the affidavit submitted in support of the motion

                          "is legally sufficient and admissible pursuant to
                          CPLR 4518(a) and [that] plaintiff complied with
                          RPAPL § 1304."

According to plaintiff, in order to address objections by the Sackolwitz defendants to the Notice of Proposed Computation, plaintiff provided documentation, i.e., a copy of the Detail Transaction History, kept in connection with the servicing of the subject loan, highlighting advances for taxes, advances for insurance and advances for property preservation/inspections; and a copy of the tax payment history, substantiating the payments made, which was considered by the Referee and found to be accurate.

It is well established that a Referee's Report will be confirmed, and will not be disturbed, when the findings contained therein are substantially support by the record – including affidavits and business records (*Flagstar Bank, F.S.B. v Konig*, 153 AD3d 790 [2d Dept 2017]); Here, the computation by Referee of amount due plaintiff is premised on business records produced by plaintiff in support of its motion for summary judgment (*Galasso, Langione & Botter, LLP*, 89 AD3d 897 [2d Dept 2011]).

The Sakolwitz defendants had an opportunity to object to the proposed computation and did so on or about June 19, 2018[1], after the stated deadline.

In any event, the Sackolwitz defendants offer no factual dispute, or proof of error to show that the Referee's computations are in any way incorrect or not substantiated by admissible evidence. The Referee relied on ample evidence, including the business records submitted by plaintiff on its initial motion for summary judgment, to support the amount due and owing plaintiff.

Judgment signed simultaneously herewith.

ENTER:

Dated: _____    JAN 2 5 2019

ENTERED
JAN 2 8 2019
NASSAU COUNTY
COUNTY CLERK'S OFFICE

_____ Hon. Thomas A. Adams
J. S. C.

[1] According to plaintiff, the objections were untimely as plaintiff did not receive said objections until June 25, 2018, beyond the deadline for service set forth in the Notice, i.e., June 21, 2018.

17. 00 1780

NASSAU INDEX#_____
FILED
JAN 2 8 2019
NASSAU COUNTY
COUNTY CLERK'S OFFICE

**Nassau County**
**Maureen OConnell**
**County Clerk**
**Mineola, NY 11501**

Instrument Number: 2019- 00018289
As
**J60 - JUDGMENT FORECLOSURE & SALE**

Recorded On:  January 28, 2019

Parties:  WELLS FARGO BANK NATIONAL ASSN TRU

    TO  DAVID SACKOLWITZ AKA

                            Num Of Pages: 16

Recorded By:  SHAPIRO                      Comment:

** Examined and Charged as Follows: **

J60 - JUDGMENT FORECLOSURE     0.00

    **Recording Charge:**    0.00

** THIS PAGE IS PART OF THE INSTRUMENT **

I hereby certify that the within and foregoing was recorded in the Clerk's Office For:  Nassau County, NY

**File Information:**                  **Record and Return To:**

    Document Number: 2019- 00018289

    Receipt Number:  1352315

    Recorded Date/Time: January 28, 2019 03:51:42P

    Book-Vol/Pg:  Bk-J  VI-4402  Pg-148

    Cashier / Station:  0 DAL  /  NCCL-JCRVBP2



*Maureen O'Connell*

**County Clerk Maureen O'Connell**

At Part 14 of the Supreme Court held in
the County of Nassau, at the Nassau
Courthouse thereof, on the _____ day of
JAN 2 5 2019 , 20 19 .

PRESENT: Hon. Thomas A. Adams, J.S.C.
JUSTICE OF THE SUPREME COURT

Wells Fargo Bank, National Association, as Trustee for
Banc of America Alternative Loan Trust 2005-8 Mortgage
Pass-Through Certificates, Series 2005-8,
                              Plaintiff(s),
        v.
David Sackolwitz a/k/a David L. Sackolwitz; Anna
Sackolwitz a/k/a Anna M. Sackolwitz; National City Bank;
Krystal Sackolwitz; "John Doe",
                              Defendant(s).

INDEX NO. 17-001780

**ORDER CONFIRMING
REFEREE REPORT AND
JUDGMENT OF
FORECLOSURE AND SALE**

MORTGAGED PROPERTY:
177 Roberta Street
Valley Stream, NY 11580

SBL #: Section 37 Block 149
Lot 33

UPON the Summons, Complaint, and Notice of Pendency filed in this action on the 29th

day of March, 2017, the Notice of Motion dated _____ , the affirmation by

Robert S. Markel, Esq., the affidavit of merit and amount due by Ebony White, who is Document

Execution Associate of Nationstar Mortgage LLC, duly sworn to on May 14, 2018, together with

the exhibits annexed thereto, all in support of Plaintiff's motion for a Judgment of Foreclosure

and Sale; and

UPON proof that the defendants, David Sackolwitz a/k/a David L. Sackolwitz and Anna

Sackolwitz a/k/a Anna M. Sackolwitz, herein has been duly served with the Summons and

Complaint in this action, and has voluntarily appeared either personally or by an attorney; and it

appearing that more than the legally required number of days has elapsed since defendants David

Sackolwitz a/k/a David L. Sackolwitz, Anna Sackolwitz a/k/a Anna M. Sackolwitz, National

City Bank, Krystal Sackolwitz, and "John Doe" were so served and/or appeared; and Plaintiff

having established to the court's satisfaction that a judgment against defendants is warranted; and

UPON the affidavit of mailing reflecting compliance with CPLR 3215(g)(3)(iii); and

UPON proof that non-appearing defendants, David Sackolwitz a/k/a David L. Sackolwitz, Anna Sackolwitz a/k/a Anna M. Sackolwitz, National City Bank, Krystal Sackolwitz, and "John Doe", are not absent, in accordance with RPAPL §1321(2); and

A Referee having been appointed to compute the amount due to Plaintiff upon the bond/note and mortgage set forth in the Complaint and to examine whether the mortgaged property can be sold in parcels; and

UPON reading and filing the Report of Charles Kovit Esq. dated June 22, 2018, showing the sum of $532,270.26 due as of the date of said Report and that the mortgaged property may not be sold in parcels; and

UPON proof of due notice of this motion upon all parties entitled to receive same, and upon all the prior proceedings and papers filed herein;

NOW, on motion by Robert S. Markel, Esq., attorney for the Plaintiff, it is hereby

ORDERED, ADJUDGED AND DECREED, that the motion is granted; and it is further

ORDERED, ADJUDGED AND DECREED, that the Referee's Report be, and the same is, hereby in all respects ratified and confirmed; and it is further

ORDERED, ADJUDGED AND DECREED, that the mortgaged property described in the Complaint and as hereafter described, or such part thereof as may be sufficient to discharge the mortgage debt, the expenses of the sale, and the costs of this action as provided by the RPAPL be sold, within 90 days of the date of this Judgment, in one parcel, at a public auction at the Calendar Control Part (CCP) Courtroom, 100 Supreme Court Drive, Mineola, NY 11501, by and under the direction of Charles Kovit, Esq., 1267 Sturlane Place, Hewlett, NY 11557, (516)765-0967 bid number 528567, who is hereby appointed Referee for that purpose; that said Referee give public

notice of the time and place of sale in accordance with RPAPL §231 in *newsday and*
VALLEY STREAM
HERALD 2 ENDO BLVD _____ ; and it is further
GARDEN CITY

ORDERED, ADJUDGED AND DECREED, that by accepting this appointment, the

Referee certifies that he/she is in compliance with Part 36 of the Rules of the Chief Judge (22

NYCRR Part 36), including, but not limited to §36.2(c) ("Disqualifications from appointment")

and §36.2 (d) ("Limitations on appointments based upon compensation"); and, if the Referee is

disqualified from receiving an appointment pursuant to the provisions of that Rule, the Referee

shall immediately notify the Appointing Judge; and it is further

ORDERED, ADJUDGED, AND DECREED that the Referee is prohibited from

accepting or retaining any funds for him/herself or paying funds to him/herself without

compliance with Part 36 of the Rules of the Chief Administrative Judge; and it is further

ORDERED, ADJUDGED, AND DECREED that the Referee shall conduct the

foreclosure sale only if Plaintiff, its successors and/or assignees, or its representative is present at

the sale or the Referee has received a written bid and Terms of Sale from Plaintiff, its successors

and/or assigns, or its representative; and it is further

ORDERED, ADJUDGED, AND DECREED that if the Referee does not conduct the

sale within 90 days of the date of the judgment, in accordance with CPLR 2004, the time fixed by

RPAPL §1351(1) is extended for the Referee to conduct the sale as soon as reasonably

practicable; and it is further

ORDERED, ADJUDGED, AND DECREED that at the time of sale the Referee shall

accept a written bid from the Plaintiff or the Plaintiff's attorney, just as though Plaintiff were

physically present to submit said bid; and it is further

ORDERED, ADJUDGED, AND DECREED that the Referee shall accept the highest

bid offered by a bidder who shall be identified upon the court record, and shall require that the

successful bidder immediately execute Terms of Sale for the purchase of the property, and pay to

the Referee, in cash or certified or bank check, ten percent (10%) of the sum bid, unless the

successful bidder is Plaintiff in which case no deposit against the purchase price shall be

required; and it is further

ORDERED, ADJUDGED, AND DECREED that, in the event the first successful

bidder fails to execute the Terms of Sale immediately following the bidding upon the subject

property or fails to immediately pay the ten percent (10%) deposit as required, the property shall

immediately and on the same day be reoffered at auction; and it is further

ORDERED, ADJUDGED, AND DECREED that the Referee shall then deposit the

down payment and proceeds of sale, as necessary, i ~~ccount maintained~~

First National Bank
1050 Franklin Avenue #100
Garden City, N.Y. 11530

Or in an IOLA account per CPLR 2609

~~for legal clients,~~ in his/her own name as Referee, in accordance with CPLR 2609; and it is further

ORDERED, ADJUDGED AND DECREED, that after the property is sold, the Referee

shall execute a deed to the purchaser, in accordance with RPAPL §1353 and the terms of sale,

which shall be deemed a binding contract; and it is further

ORDERED, ADJUDGED, AND DECREED that, in the event a party other than the

Plaintiff becomes the purchaser at the sale, the closing of title shall be held no later than 30 days

after the date of such sale unless otherwise stipulated by all parties to the sale; and it is further

ORDERED, ADJUDGED, AND DECREED that, if Plaintiff (or its affiliate, as defined

·in paragraph (a) of subdivision 1 of section six-1 of the Banking Law) is the purchaser, such

party shall place the property back on the market for sale or other occupancy: (a) within 180 days

of the execution of the deed of sale, or (b) within 90 days of completion of construction,

renovation, or rehabilitation of the property, provided that such construction, renovation, or rehabilitation proceeded diligently to completion, whichever comes first, provided however, that a court of competent jurisdiction may grant an extension for good cause; and it is further

ORDERED, ADJUDGED, AND DECREED that the Referee, on receiving the proceeds of such sale, shall forthwith pay therefrom, in accordance with their priority according to law, all taxes, assessments, sewer rents or water rates, which are, or may become, liens on the property at the time of sale with such interest or penalties which may have lawfully accrued thereon to the date of payment; and it is further

ORDERED, ADJUDGED, AND DECREED that the Referee then deposit the balance of said proceeds of sale in his/her own name as Referee in their I.O.L.A. account maintained for legal clients, and shall thereafter make the following payments in accordance with RPAPL §1354, as follows:

FIRST: The Referee's statutory fees for conducting the sale, in accordance with ~~$ 250·~~ CPLR 8003(b), not to exceed $~~500.00~~ ~~unless the property sells for $50,000.00 or more or in the event a sale was cancelled or postponed, Plaintiff shall compensate the Referee in the sum of $_____ for each adjournment or cancellation, unless the Referee caused the delay~~;

SECOND: All taxes, assessments, and water rates that are liens upon the property and monies necessary to redeem the property from any sales for unpaid taxes, assessments, or water rates that have not become absolute, and any other amounts due in accordance with RPAPL §1354(2).  Purchaser shall be responsible for interest and penalties due on any real property taxes accruing after the sale.  The Referee shall not be

responsible for the payment of penalties or fees pursuant to this appointment.  The

Purchaser shall hold the Referee harmless from any such penalties or fees assessed;

.THIRD: The expenses of the sale and the advertising expenses as shown on the

bills presented and certified by said Referee to be correct, duplicate copies of which shall

be annexed to the report of sale;

FOURTH: The Referee shall then pay to the Plaintiff or its attorney the following:

Amount Due per Referee's Report:  $532,270.26 with interest at the note rate

from May 11, 2018 until the date of entry of this judgment, together with any advances as

provided for in the note and mortgage which Plaintiff has made for taxes, insurance,

principal, and interest, and any other charges due to prior mortgages or to maintain the

property pending consummation of this foreclosure sale, not previously included in the

computation, upon presentation of receipts for said expenditures to the Referee, all

together with interest thereon pursuant to the note and mortgage, and then with interest

from the date of entry of this judgment at the statutory rate until the date the deed is

transferred;

Costs and Disbursements:  ~~$2,645.00~~ 2005.⁰⁰ adjudged to the Plaintiff for costs and County Clerk

disbursements in this action, ∧ as taxed or calculated by the hassau with interest at the statutory judgment rate from the date of

entry of this judgment;

Additional Allowance: $____ 300.____ is hereby awarded to Plaintiff in

addition to costs, with interest at the statutory judgment rate from the date of entry of this

judgment, pursuant to CPLR Article 83;

＋ 2,800·w

Attorney Fees:  ~~$4,950.00~~ is hereby awarded to Plaintiff as reasonable legal fees

herein, with interest at the statutory rate from the date of entry of this judgment;

FIFTH: Surplus monies arising from the sale shall be ~~paid into court by~~ the officer *deposited with the Nassau county Treasurer by the Referee*

conducting the sale within five days after receipt in accordance with RPAPL §1354(4)

and in accordance with local County rules regarding Surplus Monies; and it is further

ORDERED, ADJUDGED AND DECREED that if the Plaintiff is the purchaser of the

property, or in the event that the rights of the purchasers at such sale and the terms of sale under

this judgment shall be assigned to and be acquired by the Plaintiff, and a valid assignment thereof

is filed with said Referee, said Referee shall not require Plaintiff to pay in cash the entire amount

bid at said sale, but shall execute and deliver to the Plaintiff or its assignee, a deed or deeds of the

property sold upon the payment to said Referee of the amounts specified in items marked "First",

"Second", and "Third" above; that the Referee shall allow the Plaintiff to pay the amounts

specified in "Second" and "Third" above when it is recording the deed; that the balance of the

bid, after deducting the amounts paid by the Plaintiff, shall be applied to the amount due to

Plaintiff as specified in paragraph "Fourth" above; that Plaintiff shall pay any surplus after

applying the balance of the bid to the Referee, who shall deposit it in accordance with paragraph

"Fifth" above; and it is further

ORDERED, ADJUDGED AND DECREED that all expenses of recording the

Referee's deed, including real property transfer tax, which is not a lien upon the property at the

time of sale, shall be paid by the purchaser, not by the Referee from sale proceeds, and that any

transfer tax shall be paid in accordance with Tax Law §1404; and it is further

ORDERED, ADJUDGED AND DECREED that if the sale proceeds distributed in

accordance with paragraphs "First", "Second", "Third", and "Fourth" above are insufficient to

pay Plaintiff the Amount Due per the Referee's Report as set forth in paragraph "Fourth" above,

Plaintiff may seek to recover a deficiency judgment against David Sackolwitz and Anna

Sackolwitz, unless discharged in bankruptcy, in accordance with RPAPL §1371 if permitted by law; and it is further

ORDERED, ADJUDGED AND DECREED that the mortgaged property is to be sold in one parcel in "as is" physical order and condition, subject to any condition that an inspection of the property would disclose; any facts that an accurate survey of the property would show; any covenants, restrictions, declarations, reservations, easements, right of way, and public utility agreements of record, if any; any building and zoning ordinances of the municipality in which the mortgaged property is located and possible violations of same; any rights of tenants or persons in possession of the subject property; prior liens of record, if any, except those liens addressed in RPAPL §1354; any equity of redemption of the United States of America to redeem the property within 120 days from the date of sale; and any rights pursuant to CPLR 317, 2003, and 5015, or any appeal of the underlying action or additional litigation brought by any defendant or its successor or assignee contesting the validity of this foreclosure; and it is further

ORDERED, ADJUDGED AND DECREED that the purchaser be let into possession of the property upon production in hand of the Referee's Deed or upon personal service of the Referee's deed in accordance with CPLR 308; and it is further

ORDERED, ADJUDGED AND DECREED that the Defendants in this action and all persons claiming through them and any person obtaining an interest in the property after the filing of the Notice of Pendency are barred and foreclosed of all right, claim, lien, title, and interest in the property after the sale of the mortgaged property; and it is further

ORDERED, ADJUDGED AND DECREED that within 30 days after completing the sale and executing the proper conveyance to the purchaser, unless the time is extended by the court, the ~~officer~~ *Referee* making the sale shall file with the *Nassau County* clerk a report under oath of the disposition of

the proceeds of the sale in accordance with RPAPL §1355(1) and follow all local County rules regarding handling of Surplus Monies; and it is further

ORDERED, ADJUDGED AND DECREED that if the purchaser or purchasers at said sale default(s) upon the bid and/or the terms of sale the Referee may place the property for resale without prior application to the Court unless Plaintiff's attorneys shall elect to make such application; and it is further

ORDERED, ADJUDGED AND DECREED that Plaintiff shall serve a copy of this Judgment with Notice of Entry upon the owner of the equity of redemption, any tenants named in this action, and any other parties or persons entitled to service, including the Referee appointed herein; and it is further

ORDERED, ADJUDGED AND DECREED that nothing herein shall be deemed to relieve Plaintiff of any obligation imposed by RPAPL §1307 and RPAPL §1308 to secure and maintain the property until such time as ownership of the property has been transferred and the deed duly recorded; and it is further

ORDERED, ADJUDGED AND DECREED that, when the Referee files a report of sale, he or she shall concurrently file a Foreclosure Actions Surplus Monies Form; and it is further

ORDERED, ADJUDGED AND DECREED that to ensure compliance herewith, Plaintiff shall file a written report with the court within six months from the date of entry of this judgment stating whether the sale has occurred and the outcome thereof.

Said property is commonly known as 177 Roberta Street, Valley Stream, NY 11580.

The legal description of the mortgaged property referred to herein is annexed hereto as Schedule A.

ENTER

DATED: _____

JAN 2 5 2019

_____
Hon. Thomas A. Adams, J.S.C.
Justice of the Supreme Court

**ENTERED**

JAN 28 2019

NASSAU COUNTY
COUNTY CLERK'S OFFICE

Attorney certification pursuant
to 22NYCRR §130-1.1-a
is affixed to inside cover.

16-058527                    · Judgment of Foreclosure and Sale              Page 10 of 12

**Title 365 Inc**
**420 Rouster Road, Bldg 3**
**Coraopolis, PA 15108**

### SCHEDULE A

### DESCRIPTION OF MORTGAGED PREMISES

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED, SITUATE, LYING AND BEING IN THE Incorporated Village of Valley Stream, Town of Hempstead, County of Nassau and State of New York, known and designated as and by lot numbered 33 in block 149 on a certain map entitled, "Map of Fenimore Terrace, Section number 2, situated at Valley Stream, Town of Hempstead, Nassau County, N.Y. surveyed May 20, 1946 by Flick and Simon, Civil Engineers, Valley Stream, N.Y. and filed in the Office of the Clerk of the County of Nassau on July 31, 1946 under file no. 4339 and more particularly bounded and described as follows:

BEGINNING at a point on the easterly side of Roberta Street distant 326.13 feet southerly from the corner formed by the intersection of the easterly side of Roberta Street with the southerly side of Albermarle Avenue;

RUNNING THENCE easterly and at right angles to the easterly side of Roberta Street 100 feet;

THENCE southerly and parallel with the easterly side of Roberta Street 40 feet;

THENCE westerly and again at right angles to the easterly side of Roberta Street, 100 feet to the easterly side thereof;

THENCE northerly and along the easterly side of Roberta Street 40 feet to the point or place of BEGINNING.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

Wells Fargo Bank, National Association, as Trustee for Banc of America Alternative Loan Trust 2005-8 Mortgage Pass-Through Certificates, Series 2005-8,

Plaintiff,

v.

David Sackolwitz and Anna Sackolwitz, et al,

Defendants.

**COSTS OF PLAINTIFF**

INDEX NO. 17-001780

MORTGAGED PROPERTY:
177 Roberta Street
Valley Stream, NY 11580
COUNTY: Nassau
SBL #: Section 37 Block 149
Lot 33

## COSTS

| | |
|---|---|
| Costs before note of issue - CPLR 8201(1) | $200.00 |
| Allowance by statute - CPLR 8302(a)(b) | $150.00 |

*ADJUSTED AT $2005.00*
*THIS 28 DAY OF Jan. 2019*
*Maureen O'Connell Clerk, Nassau Co.*

| | | |
|---|---|---|
| First $200.00 at 10% | $20.00 | |
| Next $800.00 at 5% | $40.00 | |
| Next $2000.00 at 2% | $40.00 | |
| Next $5000.00 at 1% | $50.00 | |

| | |
|---|---|
| Additional allowance - CPLR 8302(d) | $50.00 |
| Discretionary costs on motion - CPLR 8303(a)(1) | **$400.00** |

### FEES AND DISBURSEMENTS:

| | | |
|---|---|---|
| Fee for index number - ...........................................CPLR 8018(a) | $400.00 | |
| Referee's fee to compute, per order of the court - ..CPLR 8003(a) | $500.00 | |
| Paid for searches -.................................................CPLR 8301(a)(10) | $75.00 | |
| Serving copy of Summons and Complaint -...........CPLR 8301(d) | $740.00 | 100.00 |
| Reproduction Costs - ..............................................CPLR 8301(a)(6) | $0.00 | |
| Fees for publication of Summons -........................CPLR 8301(a)(3) | $0.00 | |
| Certified copies of papers -....................................CPLR 8301(a)(4) | $0.00 | |
| Request for Judicial Intervention - .........................CPLR 8020(a) | $95.00 | |
| Clerk's fee for filing Notice of Pendency -..............CPLR 8021 (a)(10) | $345.00 | |
| Skip trace fees - .....................................................CPLR 8301(d) | $0.00 | |
| Motion Fees -..........................................................CPLR 8020(a) | $90.00 | |
| Note of Issue -.........................................................CPLR 8020(a) | $0.00 | |
| Total: | **$2,645.00** | 2005.00 |

## ATTORNEY'S AFFIRMATION

The undersigned, Robert S. Markel, Esq. pursuant to CPLR 2106 and under penalties of

perjury affirms as follows:

That he/she is the attorney of record for the Plaintiff in the above-captioned action, that the foregoing disbursements have been incurred in this action and are reasonable in amount, and that the copies of documents or papers charged for herein were actually and necessarily obtained.

Dated: _____
   Monroe County, New York

Robert S. Markel, Esq.
Associate Attorney
SHAPIRO, DICARO & BARAK, LLC
Attorneys for Plaintiff
175 Mile Crossing Boulevard
Rochester, New York 14624
(585) 247-9000
Fax: (585) 247-7380

## ATTORNEY'S CERTIFICATION

I, Robert S. Markel, am an attorney duly admitted to the practice of law in the State of New York. I am an associate of Shapiro, DiCaro & Barak, LLC, the attorneys for the Plaintiff, Wells Fargo Bank, National Association, as Trustee for Banc of America Alternative Loan Trust 2005-8 Mortgage Pass-Through Certificates, Series 2005-8, in the above captioned civil action.

I HEREBY CERTIFY, pursuant to § 130-1.1-a of the Rules of the Chief Administrator (22 NYCRR), to the best of my knowledge, information and belief, formed after an inquiry reasonable under the circumstances, that the presentation of the papers in this action checked below, or the contentions therein, are not frivolous as defined in subsection (c) of § 130-1.1 of the Rules of the Chief Administrator (22 NYCRR):

{ }    Summons & Complaint

{ }    Answer or Reply

{ }    Attorney Affirmation

{X}    Other: Order Confirming Referee Report and Judgment of Foreclosure and Sale

DATED: _____ 8/2/6/9

Robert S. Markel, Esq.
Associate Attorney
SHAPIRO, DiCARO & BARAK, LLC
Attorneys for Plaintiff
175 Mile Crossing Boulevard
Rochester, New York 14624
(585) 247-9000
Fax: (585) 247-7380

16-058527

SUPREME COURT
NASSAU COUNTY
2018 AUG 22  PM 1:14

NASSAU COUNTY
COUNTY CLERK'S OFFICE

JAN 28 2019

FILED
NASSAU INDEX #

SUPREME COURT
OF THE STATE OF NEW YORK
COUNTY OF NASSAU

INDEX NO. 17-001780

Wells Fargo Bank, National Association,
as Trustee for Banc of America
Alternative Loan Trust 2005-8 Mortgage
Pass-Through Certificates, Series 2005-8,

Plaintiff,

-VS-

David Sackolwitz and Anna Sackolwitz,
et al.,

Defendant(s).

ORDER CONFIRMING REFEREE'S
REPORT AND JUDGMENT OF
FORECLOSURE SALE

SHAPIRO, DICARO & BARAK, LLC
175 MILE CROSSING BOULEVARD
ROCHESTER, NEW YORK 14624
(585) 247-9000

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

Index # 17-001780

Wells Fargo Bank, National Association, as Trustee for
Banc of America Alternative Loan Trust 2005-8 Mortgage
Pass-Through Certificates, Series 2005-8

Plaintiff

-against-

AFFIDAVIT OF SERVICE
BY MAIL

David Sackolwitz a/k/a David L. Sackolwitz; Anna
Sackolwitz a/k/a Anna M. Sackolwitz; National City Bank;
Krystal Sackolwitz; "John Doe"

Defendant(s)

STATE OF NEW YORK)
COUNTY OF MONROE) ss.:

I, Kelly Nicholson, being sworn, say:  I am not a party to this action; I am over 18 years

of age, I reside in Rochester, New York.

On April 8, 2019, I served a Notice of Sale on the following:

Charles Kovit, Esq.
1267 Sturlane Place
Hewlett, NY 11557

David Sackolwitz a/k/a David L. Sackolwitz
177 Roberta Street
Valley Stream, NY 11580

Anna Sackolwitz a/k/a Anna M. Sackolwitz
177 Roberta Street
Valley Stream, NY 11580

Krystal Sackolwitz
177 Roberta Street
Valley Stream, NY 11580

"John Doe"
177 Roberta Street
Valley Stream, NY 11580

16-058527                          Affidavit of Service by Mail                          Page 1 of 2

Schlissel DeCorpo, LLP
479 Merrick Road
Lynbrook, NY 11563

Current Occupant
177 Roberta Street
Valley Stream, NY 11580

Nassau County Supreme Court
Motion Support Office, Room 152
100 Supreme Court Drive
Mineola, NY 11501

The address designated by said attorney(s) for that purpose by depositing a true copy of same

enclosed in a postpaid, properly addressed wrapper, in an official depository under, the exclusive

care and custody of the United States Postal Service within the State of New York.

Date: 4/8/19

Kelly Nicholson
Kelly Nicholson
Foreclosure Assistant
Shapiro, DiCaro & Barak, LLC
Attorneys for Plaintiff
175 Mile Crossing Boulevard
Rochester, New York 14624
Telephone: (585) 247-9000
Fax: (585) 247-7380

Sworn before me this 8th
day of April, 2019.

Notary Public

BRETT KELLENBERGER
Notary Public, State of New York
No. 01BR6368585
Qualified in Monroe County
Commission Expires Dec. 18, 20 2 1

16-058527                    Affidavit of Service by Mail                    Page 2 of 2

# NOTICE OF SALE

SUPREME COURT COUNTY OF <u>NASSAU</u>

Wells Fargo Bank, National Association, as Trustee for Banc of America Alternative Loan Trust 2005-8 Mortgage Pass-Through Certificates, Series 2005-8, Plaintiff

AGAINST

David Sackolwitz a/k/a David L. Sackolwitz; Anna Sackolwitz a/k/a Anna M. Sackolwitz; et al., Defendant(s)


Pursuant to a Judgment of Foreclosure and Sale duly dated January 25, 2019 I, the undersigned Referee will sell at public auction at the Nassau County Supreme Court, Calendar Control Part (CCP) 100 Supreme Court Drive, Mineola, New York, 11501 on May 7, 2019 at 11:30AM, premises known as 177 Roberta Street, Valley Stream, NY 11580. All that certain plot piece or parcel of land, with the buildings and improvements erected, situate, lying and being in the Village of Valley Stream, County of Nassau, State of NY, Section 37 Block 149 Lot 33. Approximate amount of judgment $532,270.26 plus interest and costs. Premises will be sold subject to provisions of filed Judgment Index# 17-001780.


Charles Kovit, Esq., Referee

Shapiro, DiCaro & Barak, LLC
Attorney(s) for the Plaintiff
175 Mile Crossing Boulevard
Rochester, New York 14624
(877) 430-4792

Dated: March 7, 2019

# Exhibit "C"

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
CENTRAL ISLIP DIVISION

IN RE

ANNA M. SACKOLWITZ                    CHAPTER 7

                                      CASE NO. 8-19-73236-las

                DEBTOR                 JUDGE: Hon. Louis A. Scarcella

## RELIEF FROM STAY – REAL ESTATE AND COOPERATIVE APARTMENTS

## BACKGROUND INFORMATION

1.  ADDRESS OF REAL PROPERTY OR COOPERATIVE APARTMENT: <u>177 Roberta Street, Valley Stream, NY 11580</u>

2.  LENDER NAME: <u>Wells Fargo Bank, National Association, as Trustee for Banc of America Alternative Loan Trust 2005-8 Mortgage Pass-Through Certificates, Series 2005-8</u>

3.  MORTGAGE DATE: <u>07/18/2005</u>

4.  POST-PETITION PAYMENT ADDRESS:
    Nationstar Mortgage LLC d/b/a Mr. Cooper, P.O. Box 619094, Dallas, TX 75261-9741

## DEBT AND VALUE REPRESENTATIONS

5.  TOTAL PRE-PETITION AND POST-PETITION INDEBTEDNESS OF DEBTOR(S) TO MOVANT AS OF THE MOTION FILING DATE: $<u>577,739.14 as of 05/07/2019</u>
    (*THIS MAY NOT BE RELIED UPON AS A "PAYOFF" QUOTATION.*)

6.  MOVANT'S ESTIMATED MARKET VALUE OF THE REAL PROPERTY OR COOPERATIVE APARTMENT AS OF THE MOTION FILING DATE: $<u>450,000.00</u>

7.  SOURCE OF ESTIMATED MARKET VALUE: <u>Debtor's Schedule D</u>

16-058527

## STATUS OF THE DEBT AS OF THE PAYOFF DATE

8. DEBTOR(S)'S INDEBTEDNESS TO MOVANT AS OF THE PAYOFF DATE:

    A. TOTAL:                                        $      577,739.14

    B. PRINCIPAL:                           $      415,655.68

    C. INTEREST:                          $      103,960.24

    D. ESCROW (TAXES AND INSURANCE):      $      47,958.22

    E. FORCED PLACED INSURANCE EXPENDED BY MOVANT:  $      0.00

    F. PRE-PETITION ATTORNEYS' FEES CHARGED TO DEBTOR(S): $      0.00

    G. PRE-PETITION LATE FEES CHARGED TO DEBTOR(S):  $      0.00

9. CONTRACT INTEREST RATE: 5.75%

(IF THE INTEREST RATE HAS CHANGED, LIST THE RATE(S) AND DATE(S) THAT EACH RATE WAS IN EFFECT ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE: _____.)

10. OTHER PRE-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR(S)'S ACCOUNT AND NOT LISTED ABOVE:

Fees & Costs Due (Lump Sum): $10,165.00

(IF ADDITIONAL SPACE IS REQUIRED, LIST THE AMOUNT(S) ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE: _____.)

## AMOUNT OF DEFAULT AS OF THE MOTION FILING DATE

11. DATE OF RECEIPT OF LAST PAYMENT: 03/04/2015

12. NUMBER OF PAYMENTS DUE FROM PETITION DATE TO MOTION FILING DATE: 0 PAYMENTS.

16-058527

13. POST-PETITION PAYMENTS IN DEFAULT:

| PAYMENT DUE DATE | AMOUNT DUE | AMOUNT RECEIVED | AMOUNT APPLIED TO PRINCIPAL | AMOUNT APPLIED TO INTEREST | AMOUNT APPLIED TO ESCROW | LATE FEE CHARGED |
|---|---|---|---|---|---|---|
| TOTALS | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |

14. OTHER POST-PETITION FEES CHARGED TO DEBTOR(S):

    A.  TOTAL:      $_____ 0.00

    B.  ATTORNEY'S FEES IN CONNECTION WITH THIS MOTION:      $_____ 0.00

    C.  FILING FEE IN CONNECTION WITH THIS MOTION:      $_____ 0.00

    D.  OTHER POST-PETITION ATTORNEYS' FEES:      $_____ 0.00

    E.  POST-PETITION INSPECTION FEES:      $_____ 0.00

    F.  POST-PETITION APPRAISAL/BROKER'S PRICE OPINION FEES:      $_____ 0.00

    G.  FORCED PLACED INSURANCE EXPENDED BY MOVANT:      $_____ 0.00

15. AMOUNT HELD IN SUSPENSE BY MOVANT:      $_____ 0.00

16. OTHER POST-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR(S)'S ACCOUNT AND NOT LISTED ABOVE:

*(IF ADDITIONAL SPACE IS REQUIRED, LIST THE AMOUNT(S) ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM; STATE THE EXHIBIT NUMBER HERE: _____.)*

## REQUIRED ATTACHMENTS TO MOTION

PLEASE ATTACH THE FOLLOWING DOCUMENTS TO THIS MOTION AND INDICATE THE EXHIBIT NUMBER ASSOCIATED WITH EACH DOCUMENT.

(1)    COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S INTEREST IN THE SUBJECT PROPERTY.  FOR PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE PROMISSORY NOTE OR OTHER DEBT INSTRUMENT TOGETHER WITH A COMPLETE AND LEGIBLE COPY OF THE MORTGAGE AND ANY ASSIGNMENTS IN THE CHAIN FROM THE ORIGINAL MORTGAGEE TO THE CURRENT MOVING PARTY. (EXHIBIT A.)

(2)    COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S STANDING TO BRING THIS MOTION. (EXHIBIT A.)

(3)    COPIES OF DOCUMENTS ESTABLISHING THAT MOVANT'S INTEREST IN THE REAL PROPERTY OR COOPERATIVE APARTMENT WAS PERFECTED. FOR THE PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE FINANCING STATEMENT (UCC-1) FILED WITH THE CLERK'S OFFICE OR THE REGISTER OF THE COUNTY IN WHICH THE PROPERTY OR COOPERATIVE APARTMENT IS LOCATED. (EXHIBIT ___.)

16-058527

## DECLARATION AS TO BUSINESS RECORDS

I, _Mary Gracia_ THE _Assistant Secretary_ OF _Nationstar Mortgage LLC d/b/a Mr.Cooper_ THE MOVANT HEREIN, DECLARE PURSUANT TO 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE INFORMATION PROVIDED IN THIS FORM AND ANY EXHIBITS ATTACHED HERETO (OTHER THAN THE TRANSACTIONAL DOCUMENTS ATTACHED AS REQUIRED BY PARAGRAPHS 1, 2, AND 3, ABOVE) IS DERIVED FROM RECORDS THAT WERE MADE AT OR NEAR THE TIME OF THE OCCURRENCE OF THE MATTERS SET FORTH IN IT, OR FROM INFORMATION TRANSMITTED BY, A PERSON WITH KNOWLEDGE OF THOSE MATTERS; THAT THE RECORDS WERE KEPT IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY; AND THAT THE RECORDS WERE MADE IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY AS A REGULAR PRACTICE.

I FURTHER DECLARE THAT COPIES OF ANY TRANSACTIONAL DOCUMENTS ATTACHED TO THIS FORM AS REQUIRED BY PARAGRAPHS 1, 2, AND 3, ABOVE, ARE TRUE AND CORRECT COPIES OF THE ORIGINAL DOCUMENTS.

EXECUTED AT _Lewisville, TX_

ON THIS _3_ DAY OF _June_, 20 _19_

Mary Gracia
Assistant Secretary of Nationstar Mortgage LLC
d/b/a Mr. Cooper
Affiant

NAME:
TITLE:
MOVANT: Nationstar Mortgage LLC d/b/a Mr.
Cooper as Servicer for Wells Fargo
Bank, National Association, as Trustee
for Banc of America Alternative Loan
Trust 2005-8 Mortgage Pass-Through
Certificates, Series 2005-8
STREET ADDRESS: 8950 Cypress Waters Blvd
CITY, STATE AND ZIP CODE: Coppell, Texas 75019

## DECLARATION

I, _Mary Gracia_, THE _Assistant Secretary_ OF _Nationstar Mortgage LLC d/b/a Mr. Cooper_ THE MOVANT HEREIN, DECLARE PURSUANT TO 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT BASED ON PERSONAL KNOWLEDGE OF THE MOVANT'S BOOKS AND BUSINESS RECORDS.

EXECUTED AT _Lewisville, TX_

ON THIS _3_ DAY OF _June_, 20 _19_

Mary Gracia
Assistant Secretary of Nationstar Mortgage LLC
d/b/a Mr. Cooper
Affiant

NAME:
TITLE:
MOVANT: Nationstar Mortgage LLC d/b/a Mr.
Cooper as Servicer for Wells Fargo
Bank, National Association, as Trustee
for Banc of America Alternative Loan
Trust 2005-8 Mortgage Pass-Through
Certificates, Series 2005-8
STREET ADDRESS: 8950 Cypress Waters Blvd
CITY, STATE AND ZIP CODE: Coppell, Texas 75019

16-058527

# Exhibit "D"

<table>
<tr><td colspan="2"><b>Fill in this information to identify your case:</b></td></tr>
<tr><td>Debtor 1</td><td><b>Anna M. Sackolwitz</b><br>First Name      Middle Name      Last Name</td></tr>
<tr><td>Debtor 2<br>(Spouse if, filing)</td><td>First Name      Middle Name      Last Name</td></tr>
<tr><td>United States Bankruptcy Court for the:</td><td>EASTERN DISTRICT OF NEW YORK</td></tr>
<tr><td>Case number<br>(if known)</td><td></td></tr>
</table>

☐ Check if this is an amended filing

## Official Form 106D
## Schedule D: Creditors Who Have Claims Secured by Property    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

1. Do any creditors have claims secured by your property?

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

### Part 1: List All Secured Claims

2. List all secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | Column A<br>Amount of claim<br>Do not deduct the value of collateral. | Column B<br>Value of collateral that supports this claim | Column C<br>Unsecured portion<br>If any |
|---|---|---|---|---|
| **2.1** | **Nationstar Mortgage, LLC**<br>Creditor's Name | $532,270.26 | $450,000.00 | $82,270.26 |

Describe the property that secures the claim:

**177 Roberta Street Valley Stream, NY 11580  Nassau County**

**PO BOX 650783**
**Dallas, TX 75265-0783**
Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
■ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Nature of lien. Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)  **First Mortgage**

Date debt was incurred _____  Last 4 digits of account number  **8754**

Add the dollar value of your entries in Column A on this page. Write that number here:    **$532,270.26**

If this is the last page of your form, add the dollar value totals from all pages. Write that number here:    **$532,270.26**

### Part 2: List Others to Be Notified for a Debt That You Already Listed

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

☐ Name, Number, Street, City, State & Zip Code
**Shapiro, Dicaro & Barak**
**175 Mile Crossing Blvd**
**Rochester, NY 14624**

On which line in Part 1 did you enter the creditor?   **2.1**

Last 4 digits of account number   **8754**